UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA MCCORMACK,

Plaintiff,

v

CITY OF WESTLAND, a municipal corporation,
WAYNE WESTLAND FIRE ASSOCIATION,
ASSISTANT FIRE CHIEF KELLY EGGERS, in his official
and personal capacities, TIM WILSON, in his official and
personal capacities, BRENN DOHRING, in her official and
personal capacities, CHRIS SZPARA, in his official and personal
capacities, HIGHLAND LANDSCAPE AND SNOWPLOWING,
a Michigan corporation, JEFF SPEAKS, JOSE BHEA,
JOHN DOES #1 and 2, OFFICER ABRAMSKI, in his official
and personal capacities, and TOM LUTKENHOFF, in his
official and personal capacities,

Defendants.
_____/
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, P.C.
Attorney for Plaintiff
30445 Northwestern Hwy, Ste. 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com

**COMPLAINT AND JURY DEMAND**

**Parties and Jurisdiction**

1.      Plaintiff Maria McCormack lives in Westland, Michigan.

2.     Defendant City of Westland ("the City") is a municipal corporation located in Wayne County, Michigan.

3.     Defendant Wayne Westland Fire Association ("Fire Department") is a fire department serving the cities of Wayne and Westland.  As of 2010, the Fire Prevention Division of Defendant Fire Department became responsible for enforcing Westland's ordinances.

4.     Defendant Assistant Fire Chief Kelly Eggers is an employee of the Fire Department.

5.     Defendant Tim Wilson is an employee of the Fire Department.

6.      Defendant Brenn Dohring is an employee of the Fire Department.

7.      Defendant Chris Szpara is, upon information and belief, an employee of the Fire Department.

8.      Defendant Highland Landscape and Snowplowing ("Highland") is a Michigan corporation located in Northville, Michigan.  Upon information and belief, the City contracts with Highland to enter property and seize property.

9.     Upon information and belief, Defendant Jeff Speaks is the owner/operator of Highland.

10.     Upon information and belief, Defendant Jose Bhea is an employee or agent of Highland.

11.    Upon information and belief, John Does 1 and 2 are employees or agents of Highland.  They are the men who, with Jose Bhea, entered her backyard without her permission and seized her property on or about November 13, 2015.

12.    Upon information and belief, Defendant Officer Abramski is an employee of the Fire Department.

13.    Upon information and belief, Defendant Tom Lutkenhoff is an employee of the Fire Department.

14.    Jurisdiction is proper in this court under 28 U.S.C. §1331.  In addition, the court has supplemental jurisdiction under 28 U.S.C. §1367.  Venue is proper in this district pursuant to 28 U.S.C.§1391(b).

**Common Allegations**

**Actions against Plaintiff**

15.    In July 2011, Ms. McCormack purchased a foreclosed home on Algonquin in Westland.  There, she provides a home and daily care for her disabled mother, who is a veteran.

16.    It seemed that almost from the start, her new neighbor began a campaign of harassment.  This campaign included verbal abuse, false police reports, and numerous unfounded ordinance complaints found to be unwarranted.

17.    Beginning in January 2013, Defendants Westland and Fire Department began trying to make Ms. McCormack move her trash and recycling bins from the

side of the house, near the side door, to the back of the house.  Ms. McCormack

declined to do so without seeing an ordinance requiring such an action, as the

location at the side of the house was more useful when caring for her parents.  She

requested a copy of any such ordinance. This continued until October 2013, when

the City gave her a copy of Westland City Code §82-8, which merely stated:

> All receptacles for the storage of refuse between collections shall be
> located within private property lines, and not within any alley or upon
> any public property; provided, that such receptacles may be placed in a
> public alley in the case of any existing building or structure which
> extends to the alley line.

She correctly pointed out to the City that this ordinance does not prohibit keeping

the bins on the side of the house rather than in back.  So far, the City appeared to

stop trying to make her move the bins.

18.     But the neighbor and the City were not done.  In July 2014, the neighbor

reported a litany of unfounded complaints:

| Complaint | v | Facts |
|---|---|---|
| No grass "for years" eyesore | | Same neighbor complained about "tall grass" two years earlier, when grass found to be within code.  Grass removed that year for replanting. |
| Trash can on driveway on side of house | | Permissible under ordinance |
| Wooden fence not to code bad side facing neighbor, not 6 inches off ground. | | After neighbors trespassed, used portion of wooden fencing for a "no trespassing" sign and protection for arborvitae, and put up on block.  City |

4

| | ordinance officer said this was not a violation. |
|---|---|
| Yard a mess 2 dogs no tags long list of violations | Yard was used as backyards are, in conformance.   Dogs licensed but chewed collars off. |

Plaintiff has no record of the City responding to this complaint, as the City has failed to respond to two Freedom of Information Act requests from her counsel for all such records.

19.   Nevertheless, Ms. McCormack observed Defendant Wilson and her neighbor enter her backyard without her permission on July 25, 2014 to dig out a nonconforming weed growing from the neighbor's yard into her own.  In the process, they bent her chain link protecting the property, destroyed her weed block, and damaged her landscaping.

20.   On April 24, 2015, Defendant Wilson sent a notice that the privacy fence must face the neighbor and be six inches above the ground, and insisted that the trash and recycling bins had to be stored behind fencing.  The boards Ms. McCormack was using for her "no trespassing" sign and for protection of her arborvitae was not a fence and was more than six inches above ground.  The bins were allowed to be where they were.  The notice did not cite to specific ordinance violations, nor tell her of hearing rights or appeal rights.

21.   In May 2015, the City has notes of trying to enforce the "fence"complaint against Ms. McCormack, and trying once again to enforce an

unwritten "requirement" concerning the bins, even though the bins had previously be found to conform to code.

22.     The City has a note of another "grass complaint" from July 2015 found to be unwarranted.

23.     By October 2015, Defendant Brenn Dohring responded to a complaint that Ms. McCormack was in violation of code for storing a portion of privacy fencing prior to installation, and a claim that the tarps hung over the clothesline in the backyard constituted "blight."  In fact, there was no storage of fencing prior to any installation; rather, the item was used for a "no trespassing" sign and as protection for the arborvitae.  In addition, Defendant Dohring responded to a claim that the trash cans were overflowing and lids weren't closed.  In fact, however, the wind blew the lids open, and any trash inside was securely fastened in closed plastic trash bags.

24.     Defendant Dohring wrote Ms. McCormack a letter on October 19, 2015 demanding that the tarps be removed within 5 days or the City would do so at her expense.  The letter did not cite any ordinance she allegedly violated, nor did it advise her of her right to a hearing or right to appeal.

25.     On October 27, 2015, a woman in a dark blue outfit and with a badge hanging from her neck (later identified as Defendant Dohring), and a man with "WWFA" on his warmup jacket (Chris Szpara) came to her backyard gate.  The man

demanded that she remove the tarps hanging from her clothesline.  Ms. McCormack insisted that there was no ordinance against a clothesline or hanging tarps from it. The man said that that was not true, that it was blight.  He said that it was being used in lieu of fencing and was not permitted.  When Ms. McCormack pointed out that the neighbor's fence was actual blight and also had tall weeds growing through, the man called her concerns "ridiculous."  Later, he agreed to address the problem.  The man and the woman both agreed that the tarps constituted blight, and demanded their removal within 72 hours, or the City would do so.  Ms. McCormack said she would go to court about the issue.  The man said that in his opinion the tarps were ridiculous and had to be taken down regardless of what she thought.  He also demanded that the fence portion be removed if not installed as a fence; when Ms. McCormack protested, he said that if she was going to be difficult, so would he and he demanded removal of her landscaping timber and asked whether the dogs were licensed.  In addition, Defendant Szpara claimed that she had "junk" behind the garage; but Ms. McCormack pointed out that the "junk" was in the next yard over – not on her property.

26.     Defendant Dohring wrote Ms. McCormack a letter demanding the tarp removal, removal of the fence section "in the driveway," removal of her landscaping timber, "and all other junk and debris" within 72 hours, or threatened City removal

at her expense.  Once again, the letter did not cite any ordinance she allegedly violated, nor did it advise her of her right to a hearing or right to appeal.

27.    Ms. McCormack wrote to the mayor to complain about this treatment, and tried to get an appointment to see him.  She was unsuccessful.

28.    On November 5, 2015,  a man appeared at her backyard fence and tried to get in.  His hoodie said "Highland Landscape and Brick."  When Ms. McCormack demanded his name, he identified himself as "Jose Bhea" and showed her a paper purporting to be an email from the City to Highland directing them to enter Ms. McCormack's property and remove the tarps and other property.  Ms. McCormack denied having junk in the yard and denied being in violation of any ordinance.  Ms. McCormack told him he was trespassing and denied him permission to enter.  She complained that no one had shown her any ordinance she allegedly violated.  Defendant Bhea offered to call the City for confirmation, as they sent him; Ms. McCormack asked him to get a copy of what ordinance they claimed her to be violating.

29.    On November 13, 2015, Defendant Bhea and two other  men in hoodies (John Does 1 and 2) that said "Highland Landscape and Brick" entered her backyard and seized the tarps and clothesline, ripping the hook from the exterior wall of the garage, breaking the siding.  They also cut the clothesline, ruining it.  They also took five chain link gates Ms. McCormack was using in her garden for plant supports,

and for security. Ms. McCormack caught them in the backyard, and demanded that they stop taking things and leave, as they were trespassing; they continued to take items from the yard. One man said they were from the City. They refused to give her their names. Eventually, they left and got back in a van parked in front of her house.

30.    They came back and brought back some milk crates Ms. McCormack was using in a project. She again ordered them off the property. One of them recorded her order on video.

31.    On November 14, 2015 Ms. McCormack emailed Defendant Speaks, of Highland, to complain about this trespass and demand her property back. He promised to get back to her, but never did.

32.    On November 14, 2015 Ms. McCormack also emailed Defendant Eggars to complain about the illegal entry and seizure of property. He replied that the tarps were blight that could harbor rats, and that she had been given a proper chance to comply and that that was the due process to which she was entitled. He noted that she would be receiving a bill for this removal (seizure) of property. He did not advise her of any right to a hearing on the invoice or on the amount of the invoice, or any means of appeal.

33.    Ms. McCormack replaced her clothesline and rehung her tarps.

34.    On November 24, 2015, Ms. McCormack saw a man (later identified as Officer Abramski) and Defendant Dohring approach her backyard fence with a set of bolt cutters.  Defendant Abramski wore a jacket with a patch on it; a badge on a neckchain could be seen only when the jacket opened.  Defendant Dohring made a call, and appeared to photograph the gate's lock.  Defendant Abramski, with Defendant Dohring's help, tried to cut the lock with the bolt cutters.  When Ms. McCormack came out to investigate, Defendant Abramski told her to "take off the lock or we're cutting it off."  Neither intruder showed her any warrant permitting such an order.

35.    Ms. McCormack protested that they had no right to do this and asked why they were doing it.  Defendant Abramski said they were coming into her yard to take down her line and tarps.  When she protested, Defendant Abramski told her to "take it off or else."  When Ms. McCormack asked for Defendant Abramski's identification, he said she must stand away or he would arrest her.  Ms. McCormack told them not to cut her lock.  It was then that the badge became visible, and Ms. McCormack could see that Officer Abramski was not a police officer, but an ordinance officer.  He refused her demand to stop cutting her lock off.  He refused to stop while she called the mayor's office.  He refused her demand that they leave. Upon repeated demand for his name, he finally identified himself as "Officer

Abramski," spelled it, and asked sarcastically if she could remember that. Another man joined them at this time.

36.   To save the lock from complete destruction (although it was now partially cut), she removed it under protest. She asked Defendant Abramski what he relied on for the authority to enter, and told him he was trespassing. Defendant Abramski ignored her, entered the backyard, and cut her clothes line down and took it and the tarps from the property. He said he was doing what he was told to do. Ms. McCormack told him not to cut the line, but he did. Defendant Dohring and the other man also entered the backyard. When Ms. McCormack demanded his name, the man told her he was "Tom." Upon information and belief, this is Defendant Lutkenhoff. When she demanded it, Defendant Dohring also gave her name. Ms. McCormack continued to tell them that she wanted them off her property and to stop destroying her property; she protested that they were trespassing and infringing on her rights. They said they were there pursuant to ordinance, but Ms. McCormack insisted that they had never identified any ordinance she allegedly violated. They took away her tarps and clothesline.

37.   Ms. McCormack also pointed out that the neighbor's fence on the other side of the tarps was blight and nonconforming; they ignored her.

38.     Defendant Dohring then searched the backyard over Ms. McCormack's protest that she stop.  She searched the back of the property and returned to the gate area.

39.     Defendant Dohring then removed the fabric protecting the arborvitae from winter weather, saying that only burlap was permissible.  Ms. McCormack asked what ordinance said so and when they never gave her any such notice; Defendant Dohring did not respond.  Defendants Dohring and Abramski also removed the "no trespassing" sign on the property (which also served to protect the arborvitae).

40.     Ms. McCormack asked for a copy of what they were ordered to do; they did not give her any paperwork.

41.     Defendant Abramski told her that if she "did this again," they would come back and do the same thing again.

42.     Defendant Dohring told her that tarps were not permissible.  When Ms. McCormack asked for a citation to such an ordinance, Defendant Dohring told her they didn't need to give her such information; but later, she agreed to provide it.  She told Ms. McCormack that they were only doing what the mayor and the City told them to do.

43.     Someone from the City later gave her the following Westland Code sections:

Sec. 22-458 Causes of blight or blighting factors.

\* \* \*

(2) In any area zoned for residential purposes, the storage upon any premises of any building materials or construction equipment, unless there is in full force and effect a valid building permit issued by the city for construction upon such premises and such materials are intended for use in connection with such construction;

(3) In any area other than those having a valid junkyard permit, the storage or accumulation of junk, trash, rubbish or refuse of any kind, except domestic refuse stored in such a manner as not to create a nuisance for a period not to exceed 15 days.

Sec. 22-459 Elimination of causes of blight or blighting factors.

 (a) The owner, if known, and the occupant of any premises upon which any one or more of the causes of blight or blighting factors set forth in this article are found to exist shall be notified in writing to remove or eliminate such causes of blight or blighting factors from such premises within ten days after service of notice upon him or the.  Such notice may be served personally or by certified mail, return receipt requested, addressed to the owner at the address shown on the latest city tax rolls, and to the occupant at the address of the premises involved.

44.    Neither a clothesline, tarps hung on the clothesline, nor a "no trespassing" sign constitute building materials, construction equipment, junk, trash, rubbish, or refuse.

45.    Ms. McCormack consulted counsel, who sent the City a Freedom of Information Act request by mail on November 25, 2015 to request all relevant documents.  No response was received.

46.     On or about December 3, 2015 Ms. McCormack received an invoice for $350 for Highland's seizure of her property.  It does not offer a hearing or advise of any right to appeal.

47.     On December 21, 2015 counsel sent another Freedom of Information Act request through the City's website.  No response was received.

48.     On December 29, 2015, counsel for Ms. McCormack sent the Fire Department a letter demanding that it cease and desist from the illegal entries and seizures.  This letter was sent by email as well as U.S. Mail.

49.     The next morning, people who looked like police pounded on Ms. McCormack's front door, scaring her badly.  Defendant Szpara was one.  He asked why she didn't comply with the demand to take down the tarp.  When he began questioning her further, she gave him her attorney's card and referred him to the attorney.  He went back to his truck for approximately 30 minutes, then came back to the door when the police arrived.  Ms. McCormack told them to talk to her lawyer. They left her shaken and upset.  They did not contact the lawyer.

**Facts re Authority**

50.     Upon information and belief, all defendants were acting under color of law, as agents, employees, contractors, or representatives of the City and/or the Fire Department.

51.     Upon information and belief, Highland, Defendants Speaks and Bhea, and Defendants John Does #2-4 were acting at the direction of the City and/or the Fire Department and as their agents.

52.     Upon information and belief, all other defendants were acting in accordance with City policy, procedures, customs, practices, and training.

53.     Upon information and belief, decisionmaking authorities in the City and the Fire Department were aware of defendants' practices, customs, and procedures, and either ratified and approved them, or did not correct them.

### Count I – Fourth Amendment Violations by All Defendants

54.     Plaintiff incorporates by reference paragraphs 1-52.

55.     The Fourth Amendment to the Constitution of the United States of America states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourteenth Amendment makes this right applicable to the states and their subdivisions.

56.     Ordinance violations in the City are punishable as misdemeanors. Westland City Code §1-8(a).

57.    On or about November 13, 2015, Defendants John Does 1 and 2 (from Highland), claiming to be acting under City orders, entered Ms. McCormack's fenced and locked backyard without her consent, without a warrant, and in the absence of exigent circumstances, at the direction of the City and/or the Fire Department.

58.    On that date, Defendants John Does 1 and 2 seized personal property belonging to Ms. McCormack and removed it from the premises.    They also damaged the garage.

59.    On or about November 24, 2015, Defendants Abramski, Dohring, and Lutkenhoff entered Ms. McCormack's fenced and locked backyard without her permission, without a warrant, and in the absence of exigent circumstances, claiming to be enforcing an ordinance.

60.    On that date, Defendants Abramski, Dohring, and Lutkenhoff seized and removed Ms. McCormack's personal property from the backyard.

60.    On that date, Defendant Dohring also conducted a warrantless search of the backyard.

61.    Defendant Abramski threatened to repeat the warrantless entry, search, and seizure if Ms. McCormack restrung her clothesline and/or rehung tarps from her clothesline.

62.     Defendants, acting under color of law, deprived Ms. McCormack of her Fourth Amendment rights.  42 U.S.C. §1983 entitles her to sue for injunctive relief and damages, including punitive damages against the individual defendants.  42 U.S.C. §1988 also permits her to claim costs and attorney fees.

63.     Ms. McCormack suffered damages, including loss of property, damage to property, mental anguish and emotional distress, and costs and attorney fees.

WHEREFORE, Plaintiff respectfully requests an injunction prohibiting Defendants from entering backyards without permission, warrants, or exigent circumstances, and from seizing property without warrants or exigent circumstances. In addition, Plaintiff respectfully requests damages, including economic damages, mental anguish and emotional distress damages, punitive damages, and costs and attorney fees.

**COUNT II – Fourteenth Amendment Violations by All Defendants**

64.     Plaintiff incorporates by reference paragraphs 1-52.

65.     The Fourteenth Amendment to the Constitution of the United States of America states, in part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

66.     Defendants deprived Ms. McCormack of due process in at least the following ways:

a.      On each written notice, failing to identify the ordinance that the City and/or Fire Department and its employees claimed she violated;

b.      Failing or refusing to tell her what ordinance she allegedly violated before illegally entering her property and seizing property;

c.      Failing or refusing to tell her what ordinance allegedly permitted them to enter her property without permission, warrant, or exigent circumstances;

d.      On each written notice, failing to advise her of any right to a hearing or appeal;

e.      Failing to provide any hearing prior to seizing property;

f.      Failing to provide any hearing prior to assessing a $350 charge against her;

g.      Failing to provide a mechanism to contest the $350 charge and/or failing to notify her of any such mechanism;

h.      Failing to notify her of any alleged violation before illegally entering her property on November 24, 2015 and seizing her property;

i.      Basing enforcement of ordinances on the personal opinion of the enforcing official or agent, rather than on the plain wording of the ordinances (and sometimes in contradiction to the plain wording of the ordinances);

j.      Enforcing the ordinances in a way that is unconstitutionally vague, impinging on First Amendment freedoms, not giving fair notice of what will be considered "blight," and giving the

enforcers unstructured and unlimited discretion in determining whether there is a violation.

67.     Defendants, acting under color of law, deprived Ms. McCormack of her Fourteenth Amendment rights.  42 U.S.C. §1983 entitles her to sue for injunctive relief and damages, including punitive damages against the individual defendants. 42 U.S.C. §1988 also permits her to claim costs and attorney fees.

68.     Ms. McCormack suffered damages, including loss of property, damage to property, mental anguish and emotional distress, and costs and attorney fees.

WHEREFORE, Plaintiff respectfully requests an injunction prohibiting Defendants from failing or refusing to identify the ordinances they allege to be enforcing, requiring them to enforce the ordinances as written, and requiring them to offer hearings and advise citizens of these hearing rights.  In addition, Plaintiff respectfully requests damages, including economic damages, mental anguish and emotional distress damages, punitive damages, and costs and attorney fees.

### COUNT III – Violation of First Amendment Rights Against City, Fire Department, and Defendants Dohring and Abramski

69.     Plaintiff incorporates by reference paragraphs 1-52.

70.     The First Amendment to the Constitution of the United States of America states, in part:

Congress shall make no law … abridging the freedom of speech.

This amendment is applicable to the states and their subdivisions through the Fourteenth Amendment.

71.    Defendants Dohring and Abramski, acting under color of law and pursuant to the policies and practices of the City and Fire Department, seized and removed Ms. McCormack's "no trespassing" sign, alleging that it violated some ordinance.

72.    To the extent that Defendants claim that a "no trespassing" sign violates an ordinance, such ordinance infringes on Ms. McCormack's right to free speech.

73.    Such ordinance, if it truly prohibits such a sign, is not narrowly tailored to achieve a legitimate governmental purpose while infringing free speech as little as feasible.

74.    To the extent that there is no such prohibition or restriction, Defendants Dohring and Abramski, the City, and the Fire Department deprived Ms. McCormack of free speech rights without cause.

75.    Defendants Dohring, Abramski, the City, and the Fire Department, acting under color of law, have deprived Ms. McCormack of free speech rights.  42 U.S.C. §1983 permits her to sue for injunctive relief and damages; 42 U.S.C. §1988 entitles her to costs and attorney fees.

76.    Ms. McCormack has suffered damages, including loss of the sign, mental anguish and emotional distress, and costs and attorney fees.

WHEREFORE, Ms. McCormack demands damages, including economic damages, mental anguish and emotional distress damages, punitive damages against Defendant Dohring, and costs and attorney fees.

### COUNT IV -- Trespass Against Wilson, Highland, Bhea, John Does 1 and 2, Abramski, Dohring, and Lutkenhoff

77.     Plaintiff incorporates by reference paragraphs 1-52.

78.     Ms. McCormack owns her home and yard, and was and is in possession of the premises.

79.     Defendant Wilson entered her backyard without her consent, and damaged her personal property.

80.     Defendants John Does #2-4, Abramski, Dohring, and Lutkenhoff all entered Ms. McCormack's backyard without her consent, and ignored or refused her orders to leave.

81.     Their actions constitute trespass at common law.

82.     Defendants Wilson, Abramski, Dohring, and Lutkenhoff are not afforded governmental immunity as individuals, because they did not act in good faith.

83.     Ms. McCormack suffered damages, including loss of property, damage to property, loss of privacy, loss of exclusive control of her property, and exemplary damages.

WHEREFORE, Plaintiff respectfully requests an injunction prohibiting defendants from further trespass, and damages in such amount as the Court may deem proper.

### COUNT V – Conversion by Defendants Highland, Speaks, Bhea, John Does 1 and 2, Abramski, Dohring, and Lutkenhoff

84.    Plaintiff incorporates by reference paragraphs 1-52.

85.    Defendants Highland, Speaks, Bhea, John Does 1 and 2, Abramski, Dohring, and Lutkenhoff exercised distinct acts of domain over Ms. McCormack's property by seizing and removing from her yard various items of personal property, and/or refusing to return them on demand.

86.    Such acts were wrongful.

87.    Such acts were in denial of or inconsistent with her right to exclusive possession of her personal property.

88.    Defendants Abramski, Dohring, and Lutkenhoff do not have governmental immunity as individuals for these actions, as they did not act in good faith.

89.    Ms. McCormack has suffered damages.

WHEREFORE, Ms. McCormack demands damages in such amount as the Court may deem proper.

Respectfully Submitted,

/s/ Elizabeth A. Downey

Elizabeth A. Downey (P37036)
Elizabeth A. Downey, P.C.
Attorney for Plaintiff
30445 Northwestern Hwy, Ste. 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com

December 31, 2015

## JURY DEMAND

Plaintiff demands a jury trial on all matters triable by a jury.

Respectfully Submitted,

/s/ Elizabeth A. Downey
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, P.C.
Attorney for Plaintiff
30445 Northwestern Hwy, Ste. 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com

December 31, 2015