UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA MCCORMACK,

     Plaintiff,
                               Case No. 15-cv-14507
                               Hon. Matthew F. Leitman

v.

CITY OF WESTLAND, *et al.*,

     Defendants.
_____/

## ORDER (1) GRANTING WESTLAND DEFENDANTS' MOTION TO ENFORCE SETTLEMENT (ECF #76), (2) GRANTING HIGHLAND LANDSCAPE DEFENDANTS' MOTION TO ENFORCE SETTLEMENT (ECF #77), (3) DENYING PLAINTIFF'S MOTION  RE PROPOSED ORAL SETTLEMENT AFTER THE COURT ENTERED AN ORDER FINDING DEFENDANTS VIOLATED PLAINTIFF'S RIGHTS (ECF #78), AND (4) REQUIRING PLAINTIFF TO EXECUTE NECESSARY SETTLEMENT DOCUMENTS

This is a civil action under 42 U.S.C. § 1983.  Plaintiff Maria McCormack ("Plaintiff") has asserted claims against the City of Westland, the Wayne Westland Fire Association, Highland Landscape and Snowplowing, and a number of individually-named defendants (collectively, the "Defendants").  Plaintiff alleges that the Defendants unlawfully entered onto her real property and then took and/or damaged her personal property. (*See* Am. Compl., ECF #32.)

On October 17, 2017, the parties participated in a settlement conference conducted by the Court. (*See* Oct. 17, 2017 Conf. Tr., ECF #66.)  At the conclusion

of the conference, the parties reached an agreement to settle the case, and they placed that agreement on the record. (*See id.*)  Counsel for the parties then proceeded to memorialize the agreement in two formal written settlement agreements – one between Plaintiff and the Westland Defendants[1] and another between Plaintiff and the Highland Landscaping Defendants.[2]  Plaintiff's counsel at the time was satisfied with the form of both agreements, but Plaintiff now refuses to execute the agreements and to honor the agreed-upon terms.

As a result, the Westland Defendants have filed a motion to enforce the October 17, 2017, settlement. (*See* ECF #76.)  Likewise, the Highland Landscaping Defendants have filed a motion to enforce the October 17, 2017, settlement. (*See* ECF #77.)  In response, Plaintiff has filed her own motion in which she asks the Court to hold at least certain terms of the settlement unenforceable. (*See* ECF #78.) For the reasons explained below, the Court **GRANTS** the Westland Defendants' motion, **GRANTS** the Highland Landscape Defendants' motion, and **DENIES** Plaintiff's motion.[3]

---

[1] The Westland Defendants are Defendants Officer Abramski, Brenn Dohring, Kelly Eggers, Tom Lutkenhoff, Chris Szpara, Wayne Westland Fire Association, City of Westland, and Tim Wilson.

[2] The Highland Landscaping Defendants are Defendants Highland Landscape and Snowplowing, Jeff Speaks, Gage Speaks, Alfredo Vega, and Jose Vega.

[3] The Court has determined that it may properly resolve each of the motions without a hearing. *See* L.R. 7.1(f).

# I

## A

Plaintiff lives in the City of Westland, Michigan. She does not get along with her next door neighbors, the Meads. Due in part to her conflict with them, she hung tarps along the fence that separates her yard from theirs. Thereafter, certain employees of the City of Westland and of Highland Landscape & Snowplowing entered onto Plaintiff's property without a warrant and removed some of the tarps.

On December 31, 2015, Plaintiff filed this action under 42 U.S.C. § 1983. She alleges, among other things, that the Defendants violated her rights under the Fourth and Fourteenth Amendments. (*See* Compl., ECF #1; Am. Compl., ECF #32.) Following substantial discovery, Plaintiff moved for summary judgment on her claim that the Defendants violated her rights under the Fourth Amendment. (*See* ECF #40.) In an Order dated August 10, 2017, the Court granted summary judgment in favor of Plaintiff (on liability only) against a number of the Defendants. (*See* ECF #60.)

## B

On October 17, 2017, the Court held a settlement conference in this action. Plaintiff attended along with her retained counsel. Representatives of the Defendants also attended with retained counsel.

The Court began the conference by confirming with the parties that they wished to have the Court (as opposed to some other judicial officer or private mediator) conduct the settlement conference. (*See* Oct. 17, 2017 Conf. Tr. at 5-7, ECF #66 at Pg. ID 871-73.) The Court then described its "judicial approach" to settlement. (*Id.* at 8, Pg. ID 874.) The Court explained that it would meet separately with each side, during which it would provide a "neutral detached person's view" of the case and "share with [each side] the reasons I think you should settle." (*Id.*) The Court obtained each party's consent to the settlement process it described. (*See id.* at 6-7, 9-10, Pg. ID 872-73, 875-76.)

The Court also explained to the parties that, in its experience, settlements are achieved when both sides are *unhappy* with at least some aspects of the agreement:

> Lastly, what I want to say is a word to the non-lawyers here, Ms. McCormack and the folks sitting in the back, about my experience in terms of where cases settle. Cases don't settle when one side feels really good about the results because if one side feels really good and is really happy about the amount of money they got or the amount of money they paid, then the other side is not happy, and settlements happen, in my experience, when each side is equally unhappy. Cases settle when the plaintiff feels like he or she did not get enough and the defendant feels like he or she paid too much.
>
> So if anybody in here is thinking that are going to walk out of here feeling great with a settlement is, in my view, not being realistic about how cases settle. They settle where neither side feels great because each side has taken into account the risks and benefits of litigation. So what I'm going to work for is a resolution that is fair to both parties,

> that nobody loves, but that everybody says is a sensible
> resolution of this dispute.

(*Id.* at 9, Pg. ID 875.)

The Court then met with each side and their lawyers in separate rooms. The conversations were at times stressful and animated. But with hard work and careful consideration, the parties reached an agreement after several hours of negotiations. The parties then reconvened on the record. The Court recited the material terms of the agreement reached by the parties on the record:

- The Westland Defendants would pay Plaintiff $94,500, and the Highland Landscape Defendants would pay Plaintiff a settlement amount (*see id.* at 13, Pg. ID 879);

- The Westland Defendants would arrange for and provide the installation of a privacy fence separating Plaintiff's property from her neighbors' property (*see id.*);

- The Westland Defendants and Plaintiff would consult over the type of fence to be installed. Any unresolved disputes over the fence to be installed would be presented to the Court, and the Court would "conclusively decide on the fence to be installed" (*see id.*);

- The City of Westland would designate a particular city employee to be the contact person for Plaintiff for any questions or concerns about ordinance enforcement (*see id.*);

- The City of Westland would designate a particular city employee to be the contact person for any other disputes she may have with the City (*see id.* at 13-14, Pg. ID 879-80);

- Plaintiff would release her claims that she asserted or could have asserted against the Defendants (*see id.* at 14, Pg. ID 880);

- The parties would memorialize their agreement in writing (*see id.* at 14-15, Pg. ID 880-81); and

- If and to the extent there were "any disputes [between the parties] over the effort to reduce the agreed-upon terms to writing, the disputes [would] be presented to [the Court] and [the Court would] make the final determination of which language appropriately captures the terms on which the parties have agreed." (*Id.*)

After the Court announced these terms on the record, it had the following exchange with Plaintiff and her attorney, Elizabeth Downey:

> THE COURT: . . . I believe that I have identified all of the terms of the agreement, but let me ask you, Ms. Downey, first of all, do you agree with the terms as I have stated them?
>
> MS. DOWNEY: Yes, Your Honor, we agree with those terms, and we rely on the city's good faith to get [city] council moving on this, and we will cooperate in the drafting of the agreements.
>
> THE COURT: Thank you. All right. *Ms. McCormack, let me ask you directly, did you hear the terms that I just orally announced here in open court?*
>
> MS. McCORMACK: *Yes, I did.*
>
> THE COURT: *And do those terms accurately reflect the terms to which you have agreed?*
>
> MS. McCORMACK: *Yes.*

(*Id.* at 15, Pg. ID 881; emphasis added.) Defense counsel then also confirmed that the terms announced by the Court were accurate and were agreed upon. (*See id.* at 15-19, Pg. ID 881-85.)

Counsel for the Westland Defendants and counsel for the Highland Landscaping Defendants then both stated on the record that, in order for Plaintiff to receive settlement payments, Plaintiff would need to complete an I.R.S. Form W-9. (*See id.* at 17-20, Pg. ID 883-86.) Plaintiff's counsel agreed to have Plaintiff provide the W-9. (*See id.* at 17, Pg. ID 883.) The Court then explained to Plaintiff that a completed W-9 form would be "required from you." (*Id.* at 18, Pg. ID 884.) The Court next confirmed with Plaintiff that she understood that a W-9 "is a form that you fill out and it includes name, address, and Social Security number, among other things" and that the form "is a standard part of . . . tax paperwork" that is used "to generate [an I.R.S. Form] 1099." (*Id.*)

Finally, the Court asked Plaintiff if she had any concerns with the settlement process or the terms of the settlement:

> THE COURT: All right. Ms. McCormack, I know this has been a challenging morning for you. Is there anything at all that you want to raise for consideration at this point? And I invite you to raise any concern at all that you have about any aspect of this process because what I don't want to do is get down the road and hear that you had some concern about the way the process unfolded today that would lead you to want to withdraw from this agreement. I know that it was challenging and difficult at times, but is there any point that you feel you need or want to make at this point?

(*Id.* at 21, Pg. ID 887.)  Plaintiff replied by thanking the Court for its efforts and acknowledging that, as the Court predicted at the beginning of the conference, she was "unhappy" with aspects of the agreed-upon settlement:

> MS. McCORMACK: I would like to thank you for your patience and helping resolve this.  No, my only issue – and by the way, you succeeded, I am not happy.
>
> THE COURT: I succeeded.
>
> MS. McCORMACK: That's right, you succeeded. I'm not happy.
>
> My only concern is that the person that caused all of these problems, the neighbor, is getting a windfall, and that's the only issue.  I would think that they should have to pay for that fence themselves or at least pay for half.  I don't know why –

(*Id.* at 21-22, Pg. ID 887-88.)

After Plaintiff voiced her "only concern," the Court confirmed with Plaintiff that, notwithstanding the concern, she was entering into the agreement "voluntarily and willingly":

> THE COURT: Well, the good news is even if they get a windfall, that is not coming out of your pocket.  *So understanding that you are not thrilled about that aspect, may I conclude that you are still unhappily but voluntarily and willingly going ahead with the settlement as we have announced it today*?
>
> MS. McCORMACK: *Yes*.

(*Id.* at 22, Pg. ID 888; emphasis added.)

8

**B**

Following the conference, the parties attempted to reduce their agreement to writing. But Plaintiff began raising concerns about the proposed drafts, and she would not sign. At the request of counsel, the Court convened a status conference to address the issues in dispute and to assist the parties in memorializing their agreement.

At the conference, Plaintiff raised three primary concerns about the terms of the agreement. First, she raised a concern about the height of the fence to be installed between her yard and her neighbors' yard. The parties had not specifically addressed the height of the fence when they placed the settlement on the record in October, but they did agree at that time that the Court would resolve any disputes concerning the installation of the fence. (*See id.* at 13, Pg. ID 879.) Consistent with that agreement, the Court determined that the height of the fence would be 78 inches. (*See* Dec. 18, 2017 Conf. Tr. at 24, ECF #80 at Pg. ID 1036.)

Second, Plaintiff raised a concern about the length of the fence. The Court ruled that the new fence could come at least as far forward as the current (to be replaced) fence between Plaintiff's yard and her neighbors' yard. (*See id.* at 32, Pg. ID 1044.) Plaintiff's counsel confirmed that this placement of the fence would be "within the spirit of the settlement." (*Id.*)

Third, Plaintiff objected to completing a W-9 form. (*See id.* at 33, Pg. ID 1045.) Plaintiff explained that she objected to providing a W-9 form "because of privacy." (*Id.* at 34, Pg. ID 1046.) The Court addressed this concern by persuading Defendants to agree not to disclose any of the information included on Plaintiff's W-9 form except as required by law. (*See id.* at 37-38, Pg. ID 1049-50.)[4] Notably, Plaintiff's counsel conceded that she "honestly [could not] come up with a legal argument" as to why Plaintiff should be excused from completing a W-9. (*Id.* at 33, Pg. ID 1045.)

At the conclusion of the status conference, Plaintiff complained that the earlier settlement conference had been coercive. The Court then asked Plaintiff's counsel if she felt the same way, and counsel said she did not:

> THE COURT:     I mean, Ms. Downey, let me ask you while we're together here, was there any part of the settlement process that you found unduly coercive or improper or was your experience the same as mine?

---

[4] Plaintiff also complained that when she agreed to the settlement she had not understood that the W-9 would go to the Defendants. (*See* Dec. 18, 2017 Conf. Tr. at 34, ECF #80 at Pg. ID 1046.) But the Court directed Plaintiff to the portions of the October 17, 2017, transcript at which she expressly confirmed her understanding that both groups of Defendants would receive the W-9 form. (*See id.*) Plaintiff further complained that when she agreed to the settlement she did not understand what a W-9 form was. (*See id.*) But the Court directed Plaintiff to the portions of the October 17, 2017, transcript at which the Court explained the nature of a W-9 form to Plaintiff and at which Plaintiff confirmed that she understood the Court's explanation. (*See id.* at 43, Pg. ID 1055.)

MS. DOWNEY: Your Honor, in my experience, that was a typical settlement conference. Your Honor was very active and above average in your efforts but the process was the same process that I've gone through with litigants for 33 years.

(*Id.* at 47, Pg. ID 1059.)

# C

Following the status conference, counsel for the Defendants sent to Plaintiff's counsel revised agreements reflecting the modifications ordered by the Court during the conference. Plaintiff's counsel was satisfied that the revised agreements accurately captured the original settlement as clarified by the Court during the conference, but Plaintiff nonetheless refused to sign the revised agreements. Plaintiff's refusal to sign and other related conduct led to a breakdown in her relationship with Plaintiff's counsel, and Plaintiff's counsel moved to withdraw from representing Plaintiff. (*See* Mot. to Withdraw, ECF #67.)

In the motion to withdraw, Plaintiff's counsel explained that Plaintiff "refuses to cooperate . . . in executing and complying with the settlement to which she agreed on October 17, 2017." (*Id.* at Pg. ID 891.) Counsel added that she was attempting "to take all reasonable actions to finalize the settlement put on the record on October 17, 2017 and clarified on the record on December 18, 2017," but "Plaintiff made it clear that her objective is the opposite." (*Id.*, Pg. ID 895.) Counsel noted that "[Plaintiff] has declined to cooperate in any action necessary to complete the

settlement, and has asked counsel to take certain actions that conflict with her duty as an officer of the court in this respect." (*Id.*)  The Court granted the motion to withdraw in an Order dated January 18, 2018. (*See* ECF #70.)

## D

On May 31, 2018, the Westland Defendants filed a motion to enforce the October 17, 2017, settlement. (*See* ECF #76.)  The Westland Defendants ask the Court to "order the Plaintiff to execute necessary documents, the W-9 and the Settlement Agreement within seven (7) days of the Court's expected Order." (*Id.* at Pg. ID 942.)  Also on May 31, 2018, the Highland Landscape Defendants filed a motion to enforce the October 17, 2017, settlement. (*See* ECF #77.)  The Highland Landscape Defendants ask the Court to order Plaintiff to "execute and return the agreement [previously agreed to by her counsel] within seven (7) days of the order being issued." (*Id.* at Pg. ID 970.)

On June 4, 2018, Plaintiff filed a motion asking the Court to "deem[]" that part of the settlement agreements, specifically "the issue over the fence and W-9 form," are "unenforceable." (ECF #78 at Pg. ID 1003.)  Plaintiff states that she refuses to sign the agreements because she disagrees with terms that she previously consented to on the record at the settlement conference. (*See* Pl.s' Mot., ECF #78.)  Plaintiff states there are "two main issues in dispute": "i) construction of a fence for a party [her neighbor] with no standing and ii) filling out a W-9 [to the City of

Westland before it pays her the settlement funds]." (*Id.* at Pg. ID 991.)   Plaintiff

argues that the "installation of a fence for a non or third-party is impermissible by

law" and that "the issue of the W-9 form was obtained by fraud, coerced by non-

disclosure . . . ." (*Id.* at Pg. ID 1002.)  Plaintiff also alleges that there were other

instances of coercion, undue influence, and bias during the October 17, 2017,

settlement conference. (*See id.* at Pg. ID 1001-02.)

On June 25, 2018, Plaintiff filed a response and objection to the Westland

Defendants' motion to enforce the settlement. (*See* ECF #81.)   In addition to

restating the argument in her motion, Plaintiff contends that the settlement

agreement was ambiguous and therefore there was no meeting of the minds.  Plaintiff

argues that the Court's ruling on the parties' dispute over the privacy fence at the

December 18, 2017, status conference shows that the October 17, 2017, agreement

was ambiguous. (*See id.* at Pg. ID 1071-74, 1076-78.)

Plaintiff did not file any response to the Highland Landscaping Defendants'

motion to enforce the settlement.[5]

---

[5] The Highland Landscaping Defendants served Plaintiff with their motion to enforce the settlement by depositing it in the mail on June 27, 2018. (*See* ECF #83.) The Court ordered Plaintiff to respond to the Highland Defendants' motion by July 23, 2018. (*See* ECF #82.)  She did not do so.

# II

## A

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (internal quotations omitted). "A federal court possesses this power even if that agreement has not been reduced to writing." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (internal quotations omitted).

"Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Id.* "Whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Bamerilease Capital Corp.*, 958 F.2d at 152 (internal alterations omitted). The parties appear to agree that Michigan law would govern the validity of the settlement agreement. Under Michigan law, "[i]n order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). But even if there is a meeting of the minds, an agreement will not be enforced if it resulted from "fraud or mutual mistake," *Brown v. Cty. Of Genessee*, 872 F.2d

169, 174 (6th Cir. 1989), from "unconscionable advantage," *Plamondon v. Plamondon*, 583 N.W.2d 245, 246 (Mich. Ct. App. 1998), or from coercion or duress. *See Norton v. State Hwy. Dept.*, 24 N.W.2d 132, 135-36 (Mich. 1946).

**B**

The Court concludes that the parties formed a valid contract at the October 17, 2017, settlement conference. The material terms of the agreement, including the City of Westland's construction of the neighbors' fence, the payments to Plaintiff, the release of claims by Plaintiff, the appointment of City of Westland officials to serve as contact point for Plaintiff, and the requirement that Plaintiff complete a Form W-9, were identified on the record at the hearing. Plaintiff, while represented by experienced and highly-effective counsel, expressly agreed to those terms.

Contrary to Plaintiff's argument, the fact that the Court made some specific determinations about the height and placement of the fence during the December 18, 2017, status conference, does not demonstrate that the October 17, 2017, agreement was ambiguous or incomplete. At the October conference, the parties agreed upon the material term that the City would install the fence, and the parties further agreed that if they could not reach an agreement upon the specific characteristics of the fence, then the Court would make the final call in that regard. Thus, at the October 17, 2017, conference, the parties reached a clear and definite agreement concerning how disputes over the nature of the fence would be resolved, and the Court followed

through on that agreement when it resolved the fence-related disputes at the December 18, 2017, status conference. Notably, while Plaintiff may feel that the October 17, 2017, agreement was unenforceable on the ground that it was incomplete or ambiguous, her experienced former attorney does not share that view.

Finally, the Court is certain that Plaintiff was not coerced into agreeing to the terms placed on the record and equally certain that her agreement to those terms was not the product of duress. "Duress, under the modern formulation, is present when a person, by the unlawful act of another, is induced to make a contract under circumstances that deprive him of free will," *Stefanac v. Cranbrook Educ. Cmty.*, 458 N.W.2d 56, 74 n.40 (Mich. 1990) (citing *Norton*, *supra*), and coercion is the "application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Norton,* 24 N.W.2d at 135. Neither duress nor coercion were present in this case. Indeed, Plaintiff expressly confirmed on the record at the very end of the October 17, 2017, conference that she was "*voluntarily and willingly going ahead with the settlement as we have announced it today*." (Oct. 17, 2017 Conf. Tr. at 22, ECF #66 at Pg. ID 888; emphasis added.) Likewise, Plaintiff's former counsel, who was by Plaintiff's side for every minute of the settlement conference, confirmed that the conference was "typical" and *not* tainted by coercion or duress. (Dec. 18, 2017 Conf. Tr. at 47, ECF #80 at Pg. ID 1059.)

In sum, Plaintiff's refusal to sign the settlement agreements is based upon a garden-variety case of buyer's remorse, not upon some legally-valid objection to the terms of the agreements or to the settlement process itself. Therefore, the Court will require Plaintiff to take the steps necessary to execute the settlement.

The circumstances of this case are strikingly similar to the circumstances in *McCormick v. Brezezinski*, 2010 WL 1463176 (E.D. Mich. Apr. 13, 2010). In that case, the parties reached a settlement agreement and orally placed the material terms of the agreement on the record. *McCormick*, 2010 WL 1463176 at *1. The parties agreed to reduce those terms to writing and to include in the final settlement agreement certain unspecified "standard language." *Id.* at *3. The parties further agreed that if there was a dispute about particular "standard language" to be included, the court would determine whether to include the language in the final written agreement. *Id.*

A dispute arose during the drafting process, and the plaintiff[6] declined to finalize the settlement documents. The defendant then filed a motion to enforce the agreement as placed on the record, and the plaintiff asked to set aside the agreement.

---

[6] The Westland Defendants assert that the plaintiff in *McCormick*, Linda McCormick, is the same individual as Plaintiff in this case. (*See* Westland Defs.' Mot., ECF #76, at Pg. ID 938-39.) Particularly given the difference in the names of the plaintiffs, the Court is not certain that Plaintiff was also involved in that action. The court's ruling in *McCormick* is nonetheless instructive in this case.

*See id.* The plaintiff made a number of arguments against enforcement, and the court rejected each argument.

First, the plaintiff objected to provisions in the written agreement that classified the settlement payment as "damages" for tax purposes and allowed the defendants to issue an IRS Form 1099 to the plaintiff. The plaintiff refused to provide her social security number to be included on the Form 1099. *See id.* The plaintiff argued that the provisions were "new and different terms." *Id.* The court rejected that argument. The court noted that the parties agreed that it (the court) would resolve disputes concerning standard language to be included in the agreement, and the court determined that the disputed tax provisions were "entirely standard language." *Id.* The court also directed the plaintiff to provide the defendants with her social security number because "sending a Form 1099 including [the plaintiff's] social security number is required under Federal Law." *Id.* Similarly, the requirement that Plaintiff here complete a W-9 is a reasonable and standard term to which Plaintiff voluntarily consented and which will enable the Defendants to comply with their obligation under federal law to issue a Form 1099 to Plaintiff.

Second, the plaintiff in *McCormick* argued that she was under duress when she agreed to the settlement. The court rejected that argument. *See id.* at *4. Noting that it had "personally conducted and recorded the settlement conference," the court

concluded that "[t]here exists no evidence indicating that [the plaintiff] was coerced." *Id.* at *5. Rather, the court noted, "[p]laintiff was, in fact, entirely free to turn down the proposed terms of the settlement agreement or to walk away from the discussion at any time and proceed to trial." *Id.* Likewise, in this case, the Court personally conducted the settlement agreement and concludes – based upon its personal involvement in the process as well as Plaintiff's statements to the Court on the record at the conclusion of the settlement conference – that Plaintiff did not agree to the settlement terms as a result of duress or undue pressure.

Finally, the plaintiff in *McCormick* claimed that she was misled into believing that the defendant county, rather than an insurance carrier, was making the payment due under the settlement agreement. *See id.* The court rejected this argument because it found that the defendant did not make any material misrepresentation concerning the source of the funds paid to the plaintiff. *See id.* Here, there is no evidence that any term of the agreement was misrepresented to Plaintiff.

As in *McCormick*, the Court concludes that Plaintiff was fully informed of the material terms of the agreements and voluntarily assented to be bound by those terms. Thus, Plaintiff must sign the settlement agreements that reflect those terms.

## C

Finally, the Court wishes to clarify which version of the written settlement agreement between the Westland Defendants and Plaintiff must be executed. The

Westland Defendants attached as an exhibit to their motion a written settlement agreement that reflects the terms placed on the record at the October settlement conference (the "October Version"). (*See* ECF #76-2.)   The October Version does not reflect the rulings by the Court related to the settlement terms at the December status conference.  Plaintiff, in contrast, submitted a different version of the written agreement that reflects *both* the terms placed on the record at the October settlement conference *and* the rulings by the Court at the December status conference (the "December Version"). (*See* ECF #81 at Pg. ID 1087-89.)   The Westland Defendants state that they seek an order compelling Plaintiff to sign the October Version, rather than the December Version, because, during the December 18, 2017, status conference, Plaintiff "did not agree to amend" the terms placed on the record in October. (Resp. to Pl.s' Obj., ECF #84 at Pg. ID 1102.)

The Court concludes that Plaintiff must execute the December Version. Contrary to the Westland Defendants' suggestion, the December Version is not an amendment of the terms placed on the record in October and did not require Plaintiff's additional assent.  On the contrary, the December Version simply finalizes and carries into effect the parties' original October agreement – an agreement that expressly contemplated that the Court would resolve the disputes addressed in December.

**III**

For all the reasons stated above, **IT IS HEREBY ORDERED THAT** the Westland Defendants' Motion to Enforce Settlement is **GRANTED**, the Highland Landscaping Defendants' Motion to Enforce Settlement is **GRANTED**, and Plaintiff's Motion Re Proposed Oral Settlement After the Court Entered an Order Finding Defendants Violated Plaintiff's Rights is **DENIED**.

**IT IS FURTHER ORDERED THAT:**

(1) By not later than **August 2, 2018**, the Westland Defendants shall mail to Plaintiff an executable copy of the December Version and a Form W-9;

(2) By not later than **August 13, 2018**, Plaintiff shall execute the December Version, complete the Westland Defendants' Form W-9, and mail both documents to counsel of record for the Westland Defendants; and

(3) Plaintiff shall file a certificate on the Court's docket confirming that she executed the December Version, completed the Westland Defendant's Form W-9, and mailed both documents to counsel of record for the Westland Defendants. Plaintiff's certification must be **received by the Clerk of the Court** by not later than **August 17, 2018**.

**IT IS FURTHER ORDERED THAT:**

(1) By not later than **August 2, 2018**, the Highland Landscaping Defendants shall mail to Plaintiff an executable copy of the settlement agreement

between the Highland Landscaping Defendants and Plaintiff and a Form W-9. The settlement agreement shall conform to the relevant terms placed on the record at the October 17, 2017, settlement conference, as clarified at the December 18, 2017, status conference;

(2) By not later than **August 13, 2018**, Plaintiff shall execute the copy of the Highland Landscaping Defendants' settlement agreement, complete the Highland Landscaping Defendants' Form W-9, and mail both documents to counsel of record for the Highland Landscaping Defendants; and

(3) Plaintiff shall file a certificate on the Court's docket confirming that she executed the Highland Landscaping Defendants' settlement agreement, completed the Highland Landscaping Defendants' Form W-9, and mailed both documents to counsel of record for the Highland Landscaping Defendants. Plaintiff's certification must be **<u>received by the Clerk of the Court</u>** by not later than **August 17, 2018**.

**Plaintiff's failure to comply with this Order will result in dismissal of this action with prejudice.**

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: July 30, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 30, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764